This is 4090696, Vivian Grove v. Wal-Mart Stores. We have for the appellant, Don Shearing, and for the appellee, Michael Rieses. Mr. Shearing. I represent Vivian and Chester Groves, who initially brought this lawsuit against Wal-Mart. On April 11, 2006, Vivian and Chester, who resided in Missouri, came to Quincy to shop at the Super Wal-Mart store. The facts of the case are outlined in our briefs, but I think the facts are very important in this case, and to consider not only the facts, but the exhibits that were submitted, being the pictures of the area where Ms. Groves fell. This was a situation where both she and her husband were shopping and had completed their shopping and were about to exit the store, go to the checkout lanes, and Vivian forgot a box of Kleenex that she was intended to purchase. They were walking through the produce section at that time, not shopping there, but going through the produce section, which was going to take them to the lanes where she was going to check out the other items that she had purchased. Mr. Groves was pushing the grocery cart. As she got partway through the aisle, going towards the checkout lane, she again forgot that she was purchasing a box of Kleenex and turned around and was going to transverse back through that aisle and go to where the Kleenex was and purchase or pick up that box and take it to the checkout. As she did so, she caught her foot on the pallet that was extending from this large box of produce that was sitting in the middle of the aisles. In fact, I believe the pictures reflect that there was actually four boxes of produce that were in the aisle. The trial court, Judge Walden, granted the defendant's motion for summary judgment. We were asked from this court to reverse that decision. His decision was based on two problems. Number one, he found that the condition was open and obvious. And then the second part of it was that Ms. Groves was not distracted. He relied heavily, I believe, on the statement made by Ms. Groves, who was an elderly person, married some 63 years and was in her 80s at the time of this occurrence. The question that she was asked at her deposition was, as you were walking through the produce department before you fell, were you distracted in any way? And the answer was no. Again, he was referring to walking through the produce department. I would like to point out that this test as to whether or not there is a distraction is, in fact, an objective test. It's not a subjective test. And we believe a reasonable man, looking at the facts of the situation and the pictures, which I think accurately depict the position of the boxes and the pallet at the time of the occurrence, objectively, we believe, poses a duty upon Walmart in, number one, we believe that the pictures show that this condition is not open and obvious. Clearly the box is. The box full of grapefruit is there. But in this situation, we have a box of produce that is resting on a pallet. The corners of this box are not flush with the corners of the pallet. So the pallet, and again looking at the pictures, protrudes some four to six inches. And as we look at the first picture, that is the area where Ms. Rose fell. And as she turned around, again, not to look at the produce or not to purchase produce, but to go back into the store to purchase the box of Kleenex, she caught her foot on the pallet and in fact fell. Is there any allegation that the shape of these boxes where the corners are cut is a defect? No. Well, I mean, the boxes were specifically designed like that. There were, there are arrows on it, which we clearly see, but again, we do not believe that they're in eyesight. There's another case that would hold that a person does not have to always look down as to where she's walking. But to answer your question, there isn't a defect, but these were the boxes where the produce was put in, put on the square or rectangular pallets, which in fact caused the protrusion of the pallet as to where she fell. In the pictures also, not only do we have the boxes full of fruit, which I believe could be a distraction. In fact, Ms. Rose, when she thought the time her deposition was taken, there may have been potatoes in that. But if we look at the first picture and look in the area where she was walking, we see numerous displays of fruit, which are eye level, not only to her left, but also directly in front of her in the direction that she was walking. Those aren't actually eye level, though, aren't they more waist level? I don't know what the bends of fruit are, but I think if you look to the left with the other displays, if you get to the top of them, they are in fact at eye level. Also, if you look to the back of the boxes of fruit, those displays are at eye level or even above that. And again, we have an 80 plus elderly woman who is going, again, not shopping for produce at that time, but using that area, the transverse, to get back to where she wanted to pick up this box of Kleenex. I think if we look at the restatement, one of the examples that is stated there, this situation where there was a scale or an object in the aisle and a handle was protruding. And there they found that there was a duty on the property owner, the store owner, to make that condition safe. And again, there was an exact reference to the display on both sides of the shelves where they were displaying goods at that time. So I think this fits into this fact situation. But isn't the standard a reasonable person of ordinary perception, intelligence, and judgment would realize walking into this display would or would not result in tripping or falling? I mean, we're not supposed to consider, as you said, it's an objective test. We're not supposed to consider the fact that you have an elderly client. I mean, we're supposed to look at this objectively. And I would totally agree with that if it weren't for the fact that this condition that is there has the protrusion of the pallet. If this were merely a box with the pallet underneath it with four corners being flushed, then I think that would be an objective decision that she should have seen the box and therefore she would not have run into it. But here we have a situation where it's created, not only do we have the box, which is obvious, but we also have an extension from that box. I think that's what you have to consider in this particular fact situation. The Wal-Mart in this case has referred to the Peterson case, which is a 1997 case. I think that case can be distinguished from this case. First of all, there was a dissent in that case. Secondly, in that case, we have the invitee who was at the store, had deliberate contact with the box of produce. In fact, the box in that situation, a testimony that it was facts in that case, was that it was either a round box or an octagon box, that she was in contact with that box, had looked at some of the fruit, couldn't reach across far enough to other fruit, and went around the box, and as she did, she caught her foot and fell. So she had direct contact with that. We don't know, or have not seen, and have not been furnished to us copies or pictures of what that situation looked like. But if, in fact, it's a round box or an octagon box, it's clear that there is more of the palate that may have been showing other than what we have here. We have a situation where we have four to six inches of a palate that is sticking out into an aisle where people walk. Mrs. Groves at that time was not, again, shopping in the produce. She was using that, coming out of the store to go to the checkout lane, and then back into where she thought the Kleenex was located. In your brief, Counsel, it says that other people had stumbled over this corner of the box and the palate. Is there evidence? There was one testimony from an individual that was present. I did not actually see what occurred at that time, but he offered testimony regarding him being in the store at a prior date, and observed someone stumbling over that. He was asked if he could identify when that was, or who that was, or if it was actually the fall. He could not identify the individual. He got given an approximate time, but he did indicate that he did, in fact, observe that. But I don't think the knowledge of the store, of Walmart, I think the mere fact that they put it there, they were fully aware of the condition that they created. Mr. Sheeran, was there any expert that was deposed? No. There was not. And again, I think we have a fact situation of what occurred, and we do have the pictures. No, there was not any expert. Great. I'm just wondering if there would even be somebody who could testify about when you're walking through a store and you see a big box like this, how your vision is drawn to the box, and when something's protruding under it, you would not notice it or pay attention to it. Well, to answer your question, no, there was not an expert employed to specifically address that issue. But in the Aclean case, which is a 2000 case, the court there specifically found that the person walking does not have to look down and observe as to where they're walking. Mrs. Groves testified that when she turned around to go to the area where the Kleenex was, she was looking straight ahead. That basically was her testimony. She did not indicate that she saw exactly what was in the box. She thought there may have been potatoes or something in there at that time. But again, I think if we look at the pictures, and I think, as they say, the proof is in the pudding, and I think this condition that we have here is not obvious and open. And even if the court would find, or if you would find that it is, I believe there's sufficient evidence that she was, in fact, distracted by the food in the box, by the other displays. And as we know, this is on a motion for summary judgment, which takes away from us our ability to present this to a trier of fact, who can consider not only the issues that you have, but also the other issues that you have. Issues that Judge Walden considered and that you will have to consider, J. Novo, but also weigh into that the issues of comparative negligence or contributor negligence. So this is something that the trier of fact has the entire opportunity to do. The jury would be able to not only make a determination as to whether or not there's a duty, a breach of that duty, or if the fact is obvious and open as to whether or not Mrs. Grove was distracted. If they find that she was distracted, if it was found to be open and obvious, then we could – the jury would get to the point where there would be able to determine whether or not she was distracted. And that would be a determination of what, if any, comparative negligence or contributor negligence would be there. Mr. Shearing, I'm concerned about the case law, and I want to follow it. I'm reading cases that say that a nail protruding one inch from a floorboard in a dimly lit room was open and obvious. And here we have these massive bins with the big blue pallets and big yellow warning signs. What is your best guess? Well, all right. I think, again, we look to the restatement of the first thing as to their example. I think if we also look to the Ward case, which was there was a pole there. It was obviously open. Carrying that pole – or carrying a mirror. Isn't that the difference? That person was carrying something as they exited the store and hit the pole. And it was perceivable that customers would be carrying something. But, again, we also have the green case where there was a shopping cart. We have the construction site case where there was a rut. We have the case of uneven maps at the YMCA. And then we, I think, have the case of the Whitfield Gardens. That case involved a situation where there was a basketball rim. Individuals were playing basketball. The post to the basketball goal and backboard was affixed to a large concrete tire that affixed it. And in that case they found that there was, in fact, a duty. But isn't – was the person injured playing basketball? Yes. Isn't that a little different when you're engaged in a sporting activity? The level of distraction that would exist? I guess I would only compare that to Ms. Groh's situation where she was, you know, using the aisle that they created, that she was walking down that. You know, she's an elderly person and I think they have to take the invitee at what they have, which would be an elderly woman. You know, this is a super Walmart that sells everything from soft goods to toys to, you know, a full grocery store, a supermarket. So they have a lot of individuals into that. I agree with you and I have great sympathy for your client. But if it's an objective test, I'm not sure what we do with the fact she's an elderly woman and the fact that she stated she was not distracted. She stated she was not distracted when she was walking through the store. And whether that means if there was someone said something to her or whatever, you know, it wasn't gone into any further than that. You know, she wasn't asked were you distracted in that you were prevented from seeing the pallet extending or the blue marks along the pallet or these arrows. You know, she wasn't asked that specific question was, you know, you distracted as you were basically walking through the store. And, you know, she got to the point where she was, turned around, went back and took two or three steps and caught her foot on the extension of the pallet. Okay. Well, you know, in conclusion, you know, again, I think this is a situation where we believe it's a factual situation that a jury would have to weigh the evidence and make a determination as to whether or not, again, it's open and obvious, and if so, whether or not she was legitimately distracted. I think that gets to a jury question as opposed to a grant of a motion for summary judgment. That's all I have. Any other questions? Thank you, Mr. Shearing. So what do we do with those facts? The fact that there's an elderly woman here, she testified she was not distracted, but she's in a distracting situation. Well, Your Honor, again, for the Defendant Appellee Michael Reeses from Smith-Edmondson, I think that Your Honor was correct when she observed that the standard is an objective standard. It's a reasonable person standard. It's based on that person exercising ordinary perception, intelligence, and judgment. Those are the words of the restatement section. And the facts here are undisputed. We know what the display looked like. It's not a situation where there's any dispute as to the facts of what the display looked like or whether the plaintiff was, in fact, distracted. I'm glad that counsel did quote from Vivian's deposition testimony because I want to get this right. She was asked on page 34, line 1, as you were walking through the produce department. Not just walking through the store, some other part of the store, some part of the store on the way to the produce department, but in the produce department itself. Before you fell, were you distracted in any way? No. There's no qualifier there. Now, for the distraction exception to the open and obvious doctrine to apply, you have to show two things. First, that there was something for which we're responsible that would make someone distracted. And secondly, that she was actually distracted. Now, what are the facts here that could suggest in any way that she didn't say what she meant and didn't mean what she said when she said that she was not distracted? I think we heard it again this morning. She's not shopping in the section. She's not looking at the watermelons. She's not looking at the grapefruit. She's not even intending to buy anything in that section of the store. She's not carrying anything, as was true in Ward v. Kamar. She isn't talking to anyone. Her husband is trailing her, pushing the cart 15 feet or so behind her. So she's not even talking to anyone and no one is talking to her. So on what basis, factually, can we say that there would be a question of fact for the jury as to whether she's distracted? She says she wasn't. She wasn't talking to anyone. Well, I thought Mr. Shearing was arguing that this wasn't open and obvious. I understand that, and I'll move away from that point. But I just wanted to address your question as far as the facts and whether she was distracted. Counsel, I apologize. I'm Meier-Scoff. This is Appleton. Thank you. As far as what the facts of the display are like, again, the photographs make that very clear. We have a produce display and we have flat corners. And I think Justice Pope had raised the question about was there an expert that would testify possibly that the box could draw attention. Well, that's where the warnings are. I mean, the warnings are on the flat corner. You've got big black and yellow arrows pointing down where? To the corner of the palette. And we further set off the palette from the rest of the display. It's bright blue in contrast to a white tile floor. Counsel had referred to the YMCA case involving a mat. Well, there you had, and the court made a point of it, with the mat, that you had a pucker or the mat was a little bit rolled up, and you had a black mat. It really wasn't a good color contrast with the floor. It was something that was, you know, at floor level. Here you have, and the trial judge made a very good point. If you can see the box, and everyone knows that the box is open and obvious, right? You can certainly see the warnings, which give notice to pointing down to where the corner of the palette is. Mr. Reeses, I seem to remember in the record somewhere that there was evidence that these warning signs had been covered over. No, Your Honor. There was no evidence to suggest that these warning signs were in any way concealed. I don't mean at that time. Okay. And I do have to commend counsel for attaching these photographs to the brief because it really helps us. It makes everything a lot easier for the court. So you're aware of nothing? There is nothing in the record to suggest. These photographs in the record, I should say, were identified as truly accurately depicting the condition of the display. I think that's conceded. But I was just curious about something that was in the record that indicated these warning signs are currently painted over. Oh, you mean after the accident? Right. I believe that they made some changes. I think they also changed the color of the palettes post-accident, if that's what you're referring to. But certainly on the day in question, the warning signs. Why would they do that? I don't know. I mean, the point wasn't really developed in the record, and I think part of it is due to the fact that whatever is in the brief, the plaintiff's brief, about the size of the boxes or the configuration, whether the palette should be smaller or the boxes should be larger, that point really wasn't argued in the trial court. It's not in the plaintiff's response to our motion. So it really wasn't developed in the record on that issue. So I couldn't tell you the extent to that. Is there a practical reason that the palettes are bigger than the boxes? The testimony is that the boxes are loaded, shipped, unloaded, and they're already stapled. They're physically attached to the palettes. Right. And, again, there isn't anything in the record. It wasn't developed by the plaintiff. As far as the whole operation involves the use of forklifts. Yes. And I'm wondering if there's some reason that the palettes have to be bigger than the boxes. It might be to prevent the load from being shifted. It might have to do with how it's being transported. But, again, it wasn't something that was developed in the trial court. Because if you made the box flush with the palette so there was no protruding edge, that would completely eliminate the dangerous condition. I don't know that you could do that if you're going to have flat corners. You'd have to change the shape of the boxes because with flat corners, unless you're going to have the boxes now sticking out over the palettes. And I guess at some point there might be a question as to whether you've got a balanced load when you're using a forklift or when you're loading them onto trucks. We don't have any of that evidence. No, because the plaintiff did not make an issue in the trial court. If you look at the plaintiff's response, the plaintiff didn't argue in the trial court that the boxes were too small or the palettes were too big. That is not in the plaintiff's response. The plaintiff's response argues extensively about whether Vivian was distracted and whether it was open and obvious, certainly, but nothing about whether there was some duty to make the boxes bigger or the palettes smaller. Mr. Reses, the fact that these warning arrows are all over these boxes, doesn't that give you pause to think that perhaps somebody recognized this was a danger? Certainly. If you want to compare this case to Peterson v. Aldi, as counsel referred to, in Peterson there weren't any warnings. You just had the grapefruit bin. It may have been round or it may have been octagonal in shape and the plaintiff tripped over an exposed corner. Accidents will happen, and I understand that if you give someone warning, you are recognizing that there is a condition that is capable of causing an injury if you don't avoid it. Granted, but the store is not an insurer of the safety of its customers and it only has to give the warning of a condition that would not be likely to be avoided by, again, the reasonable person exercising ordinary intelligence, perception, and judgment. And I think that this case is a better case for us than Peterson, because in Peterson there's no warning and the court says summary judgment is proper. In our case, we have multiple warnings. Warnings on the box, warnings or the color contrast on the skids. So I do think that the store met its duty when it gave those warnings. Isn't it a question of fact whether the warnings were sufficient? I don't believe there would be sufficient. I don't think there's a question of fact on this record. The courts have noted that there are many conditions which, as a matter of law, are open and obvious. And we've cited a number of them in our brief. One case from this district, True, involved a floor fan where someone tripped over a floor fan in a nursing home. I don't think you can simply say, well, everything's a question of fact when it comes to whether something's open and obvious. The courts have noted that if there's a dispute as to what it looks like, I don't create a question of fact every time if there's a dispute as to what it looks like. We know what it looked like here. We know what the display looked like. We know what the pallet looked like. There's no dispute about that. It seems to me like a store like Walmart with this display would have to recognize that people are looking at the produce in the boxes and the produce on the displays even as they're walking through the store, maybe even if they're not shopping for produce. Granted, but here she points and says she wasn't distracted. She says she's looking straight ahead. She says she's not distracted. I mean, you have to assume as true what she's saying in her deposition. And again, the distraction exception has two components. One, it has to be something capable of causing a distraction, and I think your question does address the first one. But the second part of the test is the person has to be actually distracted. Well, I guess my point more is if you're in a store and there are big displays and you're looking at them, does that impact on the open and obvious nature of this jutting out from underneath the box? Well, I think if we did not have the arrows, if we did not have the warnings that were on the boxes where you're saying we should be, where customers would be looking, if we were back in the Peterson situation, and remember that was a two-to-one decision to affirm a summary judgment, I think that argument certainly is a serious argument. But on this record, with these facts, with this display, I don't see how, as the judge said, if the plaintiff can see the box, she can see the arrows on the box. My question is, with the second problem, actually distracted, is that a legal conclusion distraction? I mean, is it possible that this elderly woman testified truthfully, I was not distracted, nobody was talking to me, I was looking ahead, and looking ahead in and of itself can be a distraction from this box and pallet with the warning, because if you're looking ahead, you're not looking down, you won't see this warning. Or the defect. Well, you know, I mean, I think in terms of being distracted, I think, first of all, it's factual. You can be distracted in a number of ways for which Walmart would have no responsibility. If she was thinking about the box of Kleenex, if she was thinking about what they were going to do after they were done with her shopping, all right, I mean, we're not responsible for every possible type of distraction that might come into someone's head as they're walking straight ahead. We're only responsible if we are somehow causing the distraction. She's not saying, the first problem is she's not saying she's distracted. If she's not saying she's distracted, I think it would be speculation for someone to now say, well, she wasn't looking where she should have been looking. She was looking straight ahead, and I guess there is no display straight ahead. She didn't say that she was looking at a display. So, again, where would we find that there's a distraction for which Walmart would be responsible and should have anticipated that she would fail to appreciate the pallet, the corner of the pallet where the arrows on the box were clearly pointing? So one other issue, I know that it had been pointed out that there was one possible other instance in which somebody had tripped over a pallet. A couple of things to keep in mind. First of all, that evidence could be relevant for one of two reasons. It could be relevant if you're trying to show that it's a prior similar incident. That would require similarity. Or two, it could be relevant to show that Walmart had notice of the danger in that area. But that incident does not fall under either category here. There was no evidence to show it was similar. The other incident was not in the produce section. It was about 50 feet away. It was outside the produce section. We don't know what was on display with the pallets outside the produce section. There was no evidence to show any similarity. As far as the other possible reason it might be relevant, which is if there was to show notice, well, no one testified that anyone complained on this occasion about the pallet. So if you can't show similarity, and if you can't show notice, this other incident would not be relevant and would not be admissible to show any particular issue that was in dispute here. I want to thank the Court for giving us oral argument this morning. I know the oral argument is a privilege and not a right. If the Court does not have any other questions, we would ask you to affirm. Thank you. Any other questions? Roberto? If nothing other to add, I guess I'll say one thing. In regards to your question as to the box, the boxes are no longer designed like that. Now the boxes are sitting on a pallet. The boxes are flush with the corners. I don't believe that's an issue that we could raise at this point in time to encourage the store owner to do what we think should have been done at the time she fell. That's all I have.